## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**SHARON L. MASCARENAS,**

Plaintiff,

vs.                                                    **No. CIV 00-156 JC/LCS**

**KENNETH S. APFEL**, **Commissioner,**
**Social Security Administration,**

Defendant.

### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION

THIS MATTER came before the Court upon Plaintiff's Motion to Reverse or Remand

Administrative Decision (*Doc. 7*), filed July 21, 2000.  The Commissioner of Social Security

issued a final decision denying the Plaintiff her claim for a period of disability, disability insurance

benefits, and supplemental security income benefits based on disability.  The United States

Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the

administrative record and the applicable law, finds that the motion is not well-taken and

recommends that it be DENIED.

### PROPOSED FINDINGS

### I. PROCEDURAL RECORD

1.      Plaintiff Sharon Mascarenas (hereinafter "Mascarenas") filed an application for a

period of disability, disability insurance benefits and supplemental security income with the Social

Security Administration on May 29, 1996 alleging a disability since November 4, 1994. *See* R. at

57 and 61. Plaintiff alleges that she became disabled on November 4, 1994 due to an injury to her back while helping someone transfer a student in a full body cast. *See* R. at 31-32. Plaintiff's application was denied at the initial level on September 27, 1996, *see* R. at 137, and at the reconsideration level on January 27, 1997, *see* R. at 144. Plaintiff appealed the denial of her claim by filing a Request for Hearing by Administrative Law Judge on April 25, 1997. *See* R. at 147.

2.      The Commissioner's Administrative Law Judge (ALJ) conducted a hearing on Mascarenas' application on November 13, 1997. *See* R. at 25. The ALJ made the following conclusions: the claimant met the disability insured status requirements of the Act on the alleged onset date and that she continued to meet them through at least the date of his decision; the claimant engaged in post-onset gainful activity since November 4, 1994; and the claimant had a severe impairment or combination of impairments. *See* R. at 15-16. However, according to Rule 201.27 in 20 CFR 404, Appendix 2 to Subpart P, Medical Vocational Guideline, the ALJ found that the "claimant's allegations [were] not supported by the medical evidence to the disabling degree alleged . . . and that she [met] the criteria in the rule and is 'not disabled'" *See* R. at 18-19.

3.      The ALJ analyzed Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993). The ALJ found that Mascarenas had not engaged in substantial gainful activity since the onset of her condition (Step 1); that she suffered from a severe impairment or combination of impairments consisting of back pain and numbness and pain in her legs that limit her ability to lift and carry (Step 2); and the severity of Mascarenas' impairments had not met or equaled any of the impairments found in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. §§ 404.1501-.1599 (Step 3).  *See* R. at 13, 17.  Neither party disputes these findings.

2

4.     The ALJ then found that Mascarenas' residual functional capacity enabled her to do at most sedentary work, and determined that Mascarenas could not perform any relevant past job (Step 4). *See* R. at 19.   Because of this finding, the ALJ proceeded to Step 5 of the sequential analysis. The ALJ finally concluded that Mascarenas was not disabled based on Rule 201.25, Subpart P, Appendix 2 ("the grids") because she was a younger individual (29 years of age) who could perform at most sedentary work. *See* R. at 19.  Plaintiff objects to this finding and, in particular, to the ALJ's reliance on "the grids" and his finding that the Plaintiff's alleged symptoms, especially regarding pain, were not credible to the disabling degree alleged.

5.     The ALJ entered his decision on February 26, 1998. *See* R. at 12-20. Thereafter, the Plaintiff filed a request for review in March of 1998 to the Appeals Council. *See* R. at 8 and 10. On December 3, 1999, the Appeals Council issued its decision denying request for review and upholding the final decision of the ALJ. *See* R. at 6. The Plaintiff subsequently filed her complaint for court review of the ALJ's decision on February 7, 2000. (*Doc. 1*).

## II. STANDARD OF REVIEW

6.     The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards.  *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)).  A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record.  *See Gossett v. Bowen*,

862 F.2d 802, 805 (10th Cir. 1988).

7.     In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. *See* 20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *See Thompson v. Sullivan*,  987 F.2d at 1487.

8.     At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience.  *See id.*

## III. ADMINISTRATIVE RECORD

9.     The record indicates that Mascarenas injured her back on November 4, 1994. *See* R. at 31-32. Plaintiff was twenty-nine years of age at the time of the accident. *See* R. at 31. The accident produced a herniated disc causing pain in the Plaintiff's back as well as numbness in her legs. *See* R. at 33 and 108. She had an initial evaluation with Dr. Timothy Taylor on November 7,

1994, where he assessed that Mascarenas could perform sedentary work and that she was demonstrating significant Waddell's signs.[1] *See* R. at 153 and 191.  Mascarenas continued to see Dr. Taylor at regular intervals and continued to have symptoms of low back and right leg pain, with numbness and tingling in the right leg.

10.     Thereafter, the Plaintiff received a total of three epidural injections performed by Dr. Ervin Hinds at the St. Vincent pain center. *See* R. at 111. After each injection, Mascarenas stated that she got some relief of symptoms but it only lasted for two weeks at a time. *See* R. at 49 and 111. She also received some physical therapy in which she testified that it did not help. *See* R. at 35. Mascarenas returned to work for about two or three weeks in early 1995, however, due to more accidents at work she stopped going. *See* R. at 83.

11.     On January 1, 1995, the Plaintiff saw Dr. Richard Castillo due to persistent symptomatology (the science of the symptoms of disease). *See* R. at 111. Dr. Castillo recommended that surgery was not needed at that time and diagnosed Mascarenas with low back pain, central bulging of the L4-5 disc of uncertain clinical significance, and marked symptom magnification. *See* R. at 111. The Plaintiff was prescribed various medications during this period. *See* R. at 17.

12.     The Plaintiff's physician at the time, Dr. Taylor, then ordered consultations with Dr. Michael Baton and Dr. David Caldwell. *See* R. at 111-12. On March 23, 1995, Mascarenas visited Dr. Michael Baten where he conducted a neurological exam in which he concluded was normal. *See* R. at 111-12. On April 21, 1995, the Plaintiff was seen by Dr. Caldwell, a orthopedic

---

[1]     Waddell's signs indicate nonorganic causes of pain due to deliberate deception on part of the patient or to malingering (sympathy) motivation caused by psychosomatic disorders. *See* P. Douglas Kiester, MD, and Alexander D. Duke, MD, Is it Malingering, or is it "Real?", POSTGRADUATE MEDICINE, December 1999.

spine specialist. *See* R. at 111-12. Dr. Caldwell diagnosed Mascarenas with emotional distress, hyperkinetic (excessive muscular activity), and low back pain. *See* R. at 111. He also noted that she possessed signs of positive Waddell's signs, sleep disturbances, decreased energy, and weight loss. *See* R. at 111-12.

13.     On May 10, 1995, Dr. Barry Diskant conducted an evaluation requested by Mascarenas' physician. *See* R. at 152. Dr. Diskant observed that Mascarenas had no difficulty rising from a seated position, limped on the right leg but was attributed to right ankle pain, was able to take steps on her heels and toes, and that she had voluntary range of motion of the lumber spine by a visual estimate. *See* R. at 113. He also concluded that Mascarenas possessed three of five Waddell's signs indicating a relatively high index of suspicion for a component of symptom magnification. *See* R. at 113. He also stated that due to the positive Waddell's signs, surgery should not be considered. *See* R. at 114.

14.     An MRI was taken on the Plaintiff on June of 1995. *See* R. at 152. And in August and September of 1995, Mascarenas saw Dr. Zanger, where he noted that the MRI results were variant. *See* R. at 152. His complete assessment stated that the Plaintiff possessed lumber strain/degenerative joint disease, significant psychalgia, and that there were very strong overlay in patient's complaints. *See* R. at 152. He also noted that the patient "admitted some emotional difficulty and that she was vague about the relationship with this." *See* R. at 152. Dr. Zanger prescribed Zoloft for emotional problems. *See* R. at 152.

15.     In November of 1995, Mascarenas switch primary physicians and started seeing Dr. Venkat Narayan. *See* R. at 153. His initial examination revealed no neurological deficits and normal motor activity. *See* R. at 202. He also concluded that surgery was not warranted. *See* R. at

6

202. He started the Plaintiff on physical therapy, epidural injections, and muscle relaxants. *See* R. at 153 and 202. In early 1996, he noted that Mascarenas was responsive to physical therapy and indicated that she had attained maximum medical improvement. *See* R. at 201. He, therefore, returned her to work in April of 1996. *See* R. at 201. She stopped working two weeks later. *See* R. at 32.

16.    In 1996, after having exhaustive conservative treatment modalities, Dr. Narayan recommended surgery. *See* R. at 200. Post-surgery, the plaintiff underwent some more physical therapy. Although she continued to complain of pain, findings indicated some decreased sensation but intact motor reflexes. *See* R. at 226. In Dr. Narayan's last dated notes, he stated that he thought there were definite signs of symptom magnification and that she should maintain physical therapy. *See* R. at 222.

**III. DISCUSSION**

17.    Plaintiff raises the following two arguments in support of her Motion to Reverse or Remand the Administrative Agency Decision.  First, Plaintiff contends that the ALJ erred in assessing her credibility. Second, Plaintiff argues that the ALJ erred in applying the grids because she was not able to perform the full range of sedentary work.

18.    Plaintiff first contends that the ALJ erred in assessing her credibility.  Specifically, Plaintiff asserts that the ALJ failed to support with substantial evidence his findings that the claimant's alleged symptoms, especially regarding pain, were not credible. "Credibility determinations are peculiarly the province of the finder of fact," and will not be overturned if supported by substantial evidence.  *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir.1990) (cited in *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). "However,

`[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Huston v. Bowen*, 838 F.2d 1125, 1131, 1133 (footnote omitted)  (10th Cir. 1988), (cited in *Kepler*, 68 at 391).  The ALJ must "articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical. *Kepler*, 68 F.3d at 391 (internal quotations omitted).  Failure to make credibility findings regarding critical testimony "fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability." *Id*. (internal quotations omitted). The ALJ must make an express credibility determination if he disbelieves a claimant's pain testimony.  *See Schroeter v. Sullivan*, 977 F.2d 391, 394-95 (7th Cir. 1992). It is not this Court's job to make an independent judgment as to the credibility of the claimant's testimony regarding her subjective physical symptoms. "[T]he determination of credibility is left to the observations made by the Administrative Law Judge as the trier of fact." *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir.1983).

19.     Specifically, with respect to the credibility issue, Plaintiff contends that the ALJ did not support his findings pertaining to positive Waddell's signs and symptom magnification with substantial evidence. Plaintiff also asserts that she suffers from a pain-producing impairment and that the ALJ was required to consider her complaints of pain by evaluating her use of pain medication, her attempts (medical or non-medical) to obtain relief, the frequency of her medical contacts, and the nature of her daily activities, as well as subjective measures of credibility including the consistency or compatibility of non-medical testimony with the objective medical evidence.  *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995).  The ALJ not only considered these factors in his decision, but he determined that "the claimant's allegations are not supported

8

by the medical evidence to the disabling degree alleged. More than two physicians, including her treating surgeon, have reported positive Waddell's signs and symptom magnification." *See* R. at 18. The record is replete with physicians' opinions concerning the Plaintiff's symptom magnification and positive Waddell's signs. These physicians, Drs. Taylor, Caldwell, and Diskant, all personally observed the Plaintiff and concluded that she was presenting positive Waddell's signs or that she was magnifying her symptoms or both.

20.    Since it is not the duty of this Court to make an independent judgment as to the credibility of the Plaintiff's testimony regarding her subjective physical symptoms, this Court defers to the ALJ's finding. However, the ALJ must have based his finding on substantial evidence. In coming to his conclusion, the ALJ based his credibility assessment of the claimant on evidence on the record and reasonably determined that the claimant was not credible due to numerous findings of the claimant's personal doctors. Therefore, this Court agrees with the ALJ's findings and holds that Plaintiff's testimony of subjective complaints and functional limitations was not supported by the evidence as a whole to the disabling degree alleged and therefore lacked credibility.

21.    Plaintiff next argues that the ALJ erred in applying the grids because she was not able to perform the full range of sedentary work. She also argues that the ALJ erred in using only the grids and not a general evaluation of disability taking into account her exertional and non-exertional impairments. Application of the grids is appropriate only if the claimant is capable of performing a full range of work required at a particular exertional level on a daily basis and if the claimant possesses the physical capacity to perform most of the jobs falling within that category. *Ragland v. Shalala*, 992 F.2d 1056, 1058 (10th Cir.1993).  Where a claimant's exertional capacity

9

is further restricted by non-exertional limitations, however, reliance upon the grids is misplaced.

*Id.* However, an ALJ may rely on the grids when evaluating non-exertional impairment if

plaintiff's testimony is not entirely credible. *Williams v. Bowen*, 844 F.2d 748, 755 (10th Cir.

1988) (credibility determinations are province of ALJ) (*cited in Castellano v. Sec'y of HHS*, 26

F.3d 1027, 1029 (10th Cir. 1994)). The Supreme Court sustained use of the grids in appropriate

situations as a legitimate method of making disability determinations more uniform. *Heckler*, 461

U.S. at 467. It noted that use of the grids avoided the necessity of calling a vocational expert to

testify in each case in which step five of the evaluation process was reached. *Id.*

> Instead, the vocational expert could be reserved for special situations where a
> claimant did not fit the grids and additional evidence was necessary. Use of the
> Medical-Vocational Guidelines is predicated on an impairment that limits the
> strength or exertional capacity of the claimant. Therefore, if a claimant's
> impairment is of a different nature, the grids may not be fully applicable. For
> instance, the regulations note that certain mental, sensory, or skin impairments,
> environmental restrictions, or postural and manipulative restrictions may be
> independent from exertional limits. 20 C.F.R., pt. 404, subpt. P, app. 2, §
> 200.00(e) (1986). Where such "nonexertional" limitations combine with exertional
> limitations which do not in and of themselves establish a disability, then the grids
> are to provide no more than a framework for determining disability. The hearing
> officer is not to automatically or mechanically apply the grids but instead must
> consider all the relevant facts in determining whether the nonexertional limitations
> diminish the claimant's ability to perform other work. *Id.* at § 200.00(e)(2). *Talbot
> v. Heckler*, 814 F.2d 1456 (10th Cir. 1987) (citing *Heckler v. Campbell,* 461, U.S
> 458 (1983)).

22.     In this case, the ALJ precisely determined that the Plaintiff was not credible and

that her allegations of her pain constituting a non-exertional limitation were not supported by

medical evidence. The ALJ relied on medical evidence pertaining to Plaintiff's diagnosis of

positive Waddell's signs and symptom magnification. Since there was no credible indication of a

non-exertional limitation, the ALJ properly established her residual functional capacity to do

10

sedentary work. He then properly relied on Rule 201.27 in 20 CFR 404, Appendix 2 to Subpart P (Medical Vocational Guidelines - "Grids,") to find that she was not disabled. *See Heckler*, 461, U.S 458.

23.     The Plaintiff claims that the ALJ erred in finding that she could perform the full range of sedentary work. However, the ALJ was proper in relying on objective evidence in finding that she was able to perform sedentary work. He relied on the Plaintiff's treating physician, Dr. Taylor's notes that stated that she could do sedentary work and that she could lift no more than thirteen pounds frequently, but with no repetitive back bending. *See* R. at 18. The ALJ was not bound to go beyond exertional limitations to evaluate the Plaintiff's residual work capacity since there was no proof of any non-exertional limitations that would impede his reliance on the "grids."

24.     Therefore, this Court finds that substantial evidence supports the ALJ's use of Rule 201.57 to find that Plaintiff was disabled.

## RECOMMENDED  DISPOSITION

The ALJ applied the correct legal standards and the decision is supported by substantial evidence.  I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing (*Doc. 7*), filed July 21, 2000, be denied, the decision of the ALJ affirmed, and this case dismissed.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and recommendations that party may  file with the Clerk of the District Court written objections to such proposed findings and recommendations.  A party must file any objections within the ten day period allowed if that party

wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.


_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**


F:\Amanda\SocSec\00-156 PFD